UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-4465 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| DAVID SHULKIN, Secretary, | ) | |
| U.S. Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Unhappy at work, plaintiff filed against defendant a two-count complaint in which he alleges violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq. Defendant moves for summary judgment on both counts. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment.

**I.  BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider any facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

Plaintiff James Henderson ("Henderson") has worked for the Veterans Administration since 1986, when he was hired as a patrol officer. By 1997, Henderson was a deputy chief (or an assistant chief—the parties do not agree on the title) in the police department at Hines VA Medical Center ("Hines"). In 1999, he resigned the assistant/deputy chief position but continued to work at Hines. Henderson is an African-American man, who was born on December 22, 1956.

In September 2006, Henderson injured his shoulder and wrist at work. Plaintiff was forced to wear a brace, which defendant supplied (along with medical care) for the injury. In 2007, Henderson became a detective, which is still his position today. The parties agree that Henderson has never been disciplined or suspended.

By the middle of 2012, Steven Thurman ("Chief Thurman"), a white male born in 1954, became the acting Chief of Police at Hines. His prior position had been as Chief of Police at Jesse Brown VA. Thurman had been told (the parties do not say when) by the Director of Jesse Brown VA that he needed to change the culture of the Police Service and needed to fight frivolous equal-employment-opportunity ("EEO") cases. In May 2012, Chief Thurman asked Assistant Chief James Runge ("Assistant Runge") for a list of officers who had filed EEO complaints. At a staff meeting in May 2012, Chief Thurman made comments about the EEO process, including that he would fight EEO complaints rather than settling them.

At some point (the parties do not say when), the Office of Inspector General received a report of misuse of overtime within the police department at Hines. One Dr. Graves (whose title the parties dispute), instructed Chief Thurman to investigate. In September 2012, Chief Thurman sent to Henderson and several other officers (a white male officer, a black female officer and a black male officer) a Letter of Inquiry asking about overtime. In the letter to

Henderson, Chief Thurman asked about overtime on four Saturdays and Sundays. Plaintiff's assigned work schedule was, at all relevant times, 8:00 a.m. to 4:00 p.m., Monday through Friday. Henderson explained that he had taken overtime those days in order to travel to training. Henderson was not disciplined.

By October 25, 2012, Chief Thurman had noticed that plaintiff had taken nearly every Friday off for about one year. Although plaintiff had been approved to take those days off, Chief Thurman told him to stop, because Hines was short on staff. Henderson was not disciplined.

On October 27, 2012, Henderson passed an annual physical examination that was valid until May 31, 2013. The VA requires its officers to pass annual physical and psychological examinations, because the position requires heavy lifting and defending oneself from "hostile suspects." Officers are expected to be able to handle uncooperative offenders, mentally-disturbed suspects and respond to crimes in progress. The VA handbook describes the physical requirements of officers:

> Police Officers must be capable of arduous physical exertion. This includes the ability to carry persons in emergency evacuations, to run to the assistance of offense victims, and intercede in physical disturbances. Any structural or functional limitation or defect which tends to interfere materially with a high degree of physical activity will disqualify.

(Docket 69-14 at Appx. A ¶ 4). In addition, the VA requires officers to be certified with their duty firearm every six months. The VA's policy grants the Chief authority to remove for good cause an officer's authority to carry a firearm.

In December 2012, Assistant Runge (who, it seems, was plaintiff's supervisor at the time, although the parties do not say) told plaintiff he would receive a cash bonus of $750 on account of his "excellent performance." At Hines, employees may receive bonuses, depending on their performance. To obtain a bonus, an employee must: (1) be given, at the start of the year,

3

performance standards outlining the expectations the employee's manager has for the employee; and (2) perform up to those expectations. In plaintiff's case, though, a Human Resources Specialist, Estella Guerrero, noticed that plaintiff had not been given any performance standards at the beginning of the year and, thus, could not receive a bonus at the end of the year. Plaintiff's review was one of several sent back to managers for additional information. By January 2013, though, plaintiff had a new supervisor, Assistant Chief Hubert Thompson ("Assistant Chief Thompson"). Assistant Chief Thompson, an African American male born in 1978, testified that in order for plaintiff to have received a bonus at that point, Assistant Chief Thompson would have had to have "made up some paperwork" (i.e., established retroactively plaintiff's performance expectations for the prior year), which he was "not willing to do."

On January 16, 2013, Chief Thurman sent plaintiff a memo to inform plaintiff that he was being reassigned from detective to patrolmen. Chief Thurman had received recommendations from inspectors about reassigning staff. (Additional details about the recommendations are not in the record.) Chief Thurman believed plaintiff lacked a sufficient caseload to remain a detective, so Chief Thurman chose plaintiff for reassignment. Chief Thurman informed plaintiff that he was being temporarily reassigned, because they were short on patrolmen. The change did not affect plaintiff's pay, benefits or salary grade, and it did not change his work schedule.

Also on January 16, 2013 (the parties do not say which events happened first), plaintiff complained that another officer, Cary Kolbe ("Kolbe"), had stated that plaintiff no longer worked at Hines. Plaintiff did not witness Kolbe make the comment, and it is unclear how plaintiff got wind of it. Kolbe, for his part, denies making a comment about plaintiff and recalls making a similar comment about someone else. In any case, plaintiff also accused Kolbe of having been in plaintiff's office. Chief Thurman told plaintiff he would no longer have an office,

now that he would be a patrolman. Plaintiff told Chief Thurman he would file an EEO complaint, and plaintiff did so. (Whether that complaint was about Kolbe or the temporary reassignment, the parties do not say.)

On or about January 23, 2013, plaintiff cleaned out his office and, in the process, strained his shoulder and wrist. The next day, on January 24, 2013, plaintiff provided Chief Thurman a note from his doctor. The doctor's note stated that plaintiff could return to work on modified duty but needed to "refrain from shooting his weapon until further notice." In addition, plaintiff was restricted from typing continually for eight hours or lifting much weight over his head. Also on January 24, 2013, the VA learned from the Office of Resolution Management that plaintiff had filed a complaint in which he alleged that Chief Thurman had discriminated against him and retaliated against him.

On January 25, 2013, Chief Thurman notified plaintiff that his firearm authority was suspended. Chief Thurman sent plaintiff a memo that said, among other things:

> 1. This memo is to inform you that based upon your not being medically qualified for duty, as required per VA Handbook 0730; your VA Police credentials have been temporarily suspended. This should in no way be construed as a disciplinary action.
> 
> \* \* \*
> 
> 3. During this time you will not have arrest authority and will not be allowed to carry any departmental credentials. Your credentials will be surrendered to your supervisor or me. Once you have returned to full duty we will arrange a date to return your credentials to you.
> 
> 4. In order for you to return to full duty you must pass your annual physical. Again, this is not disciplinary action. Rather, we want to ensure you are fully capable of performing all of the duties of a police officer to prevent injury to you or others.

(Docket 69-16). Plaintiff's pay and salary grade remained the same. Chief Thurman testified that neither race nor age was a factor in his decision. During the time he was Chief, Thurman

also suspended the arrest authority of a Hispanic officer, a white officer and one other black officer.

In a declaration, plaintiff states that other officers, who were Causasian and who had not filed EEO complaints, did not have their credentials or firearms removed even though they had "obvious physical conditions." Plaintiff does not identify any such individuals. Defendant, however, put forth a few undisputed details regarding other employees. Deputy Chief John Bailey, a white male with prior EEO activity and who is roughly the same age as plaintiff, had his credentials suspended due to a physical condition, though not at the condition's outset. Plaintiff's brother, who is African American and was 59 years of age at the time, had his firearm authority suspended, though not his credentials, during a four-month medical condition. William Jones, a 67-year-old African American male, had his firearm authority suspended but kept his credentials during a medical issue. Patrick Logan, a 29-year-old white male, had his firearm authority suspended but kept his credentials during a medical issue. Kelly Foot, a 50-year-old white male, had his firearm authority suspended but kept his credentials during a medical issue. Antonio Occasio, a 35-to-40-year-old Mexican American, had his firearm authority suspended but kept his credentials during a medical condition. John Harris, an African American male who was about 60 at the time, had his firearm authority suspended but kept his credentials during a medical issue. Alfred Thompson, a white male in his early 50s, had his firearm authority suspended but not his credentials during a medical issue. Jason Kelly's credentials were not suspended during a medical issue.[2]

---

[2] It is undisputed that John Harris, Alfred Thompson and Jason Kelly reported to Marsh, who took over as Chief at Hines in late March 2013.

At the end of March 2013, Gary Marsh became Police Chief at Hines. Marsh is a white male and, at the time, was 62 or 63 years of age. Marsh offered to return plaintiff to the detective office in order to assist with reports of survey. Plaintiff declined, because he thought the typing would cause his hand to swell and because he thought it would be unsafe without a badge and firearm. At some point (plaintiff does not say when), plaintiff asked Marsh to return his credentials and firearm. Marsh could not, because, by May 31, 2013, plaintiff's training and his annual physical and psychological exams had expired. Defendant's employee health department would not give plaintiff a physical or psychological examination until plaintiff's doctor lifted the firearm restriction.

Eventually, in May 2017, plaintiff provided the employee health department with documents saying plaintiff could return to work without restrictions. The employee health department administered the annual physical and psychological testing, which plaintiff passed. After plaintiff passed his testing, including his firearms qualification on May 31, 2017, Chief Marsh returned plaintiff's credentials and firearm.

In the meantime, back in 2014, Chief Marsh had promoted Officer Kolbe to the position of Criminal Investigator. Chief Marsh had never seen plaintiff perform detective duties.

Plaintiff had filed a formal complaint of discrimination, retaliation and hostile work environment on January 30, 2013. The VA investigated and, on March 16, 2017, issued a final agency decision finding that plaintiff had failed to prove discrimination, harassment or retaliation. Plaintiff timely filed suit here.

## II.   STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. DISCUSSION

### A. Count I

In Count I, plaintiff asserts claims for disparate treatment under the ADEA and Title VII. He also asserts a claim for hostile-environment discrimination.

#### 1. Plaintiff's claim for age discrimination

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The protections of the ADEA are limited to "individuals who are at least 40 years old." 29 U.S.C. § 631(a); *Wrolstad v. Cuna Mutual Ins. Soc.*, 911 F.3d 450, 454 (7th Cir. 2018).

To prevail on a claim for age discrimination, a plaintiff must put forth evidence that age was the "but-for" cause of the adverse action. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA,

8

therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse action."). Plaintiff "may carry his burden by presenting direct or circumstantial evidence" that defendant failed to hire him "because of his age," or he may proceed under the "burden-shifting approach by producing evidence that a similarly-situated person not in the protected class was treated more favorably." *Wrolstad*, 911 F.3d at 454. Ultimately, the question on a summary judgment motion is "whether the evidence as a whole would allow a reasonable jury to find that plaintiff suffered an adverse job action because of his age." *Wrolstad*, 911 F.3d at 454.

Defendant, noting that plaintiff was never disciplined and never had his pay reduced or his schedule changed, argues that plaintiff has not suffered any actionable adverse employment action. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (ADEA) ("not everything that makes an employee unhappy is an actionable adverse action") (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (Title VII)). Generally, actionable adverse employment actions fall within three categories:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing [him] from using [his] skills and experience, so that the skills are likely to atrophy and [his] career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of [his] present job altered, but the conditions in which [he] works are changed in a way that subjects [him] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [his] workplace environment.

*Nagle*, 554 F.3d at 1116 (quoting *Nichols*, 510 F.3d at 780); *see also Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (Title VII).

In response to defendant's motion for summary judgment, plaintiff argues that he has suffered two adverse employment actions: first when defendant denied plaintiff a performance award and second when Chief Thurman removed plaintiff's firearm authority and credentials.

9

The Court agrees with defendant that defendant's failure to pay plaintiff a $750 performance award is not an actionable adverse action under the ADEA (or Title VII, to which the same standard applies). The Seventh Circuit has explained that the "loss of a bonus is not an adverse action in a case such as this where the employee is not automatically entitled to the bonus." *Rabinowitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (retaliation claim); *see also Nasserizafar v. Indiana Dep't. of Transp.*, 546 Fed.Appx. 572, 575 (7th Cir. 2013) ("Withholding a discretionary raise or bonus is not an adverse employment action.") (Title VII); *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (Title VII). Here, plaintiff has not shown that he was automatically entitled to the bonus. To the contrary, it is undisputed that the VA gave bonuses only to employees who reached certain performance standards set by their supervisors at the beginning of the year. Employees who were not given performance standards could not receive a bonus. Because plaintiff has not shown that he was automatically entitled to the bonus, plaintiff did not suffer an adverse employment action when he did not receive the bonus.

On the other hand, the Court agrees with plaintiff that a reasonable jury could conclude that plaintiff suffered an adverse employment action when Chief Thurman removed plaintiff's firearm authority and credentials. Although, as defendant points out, the change did not affect plaintiff's salary, grade or work schedule, it affected the duties he could perform and may have affected his potential for promotion. Plaintiff has put forth evidence that, in 2014, Chief Marsh promoted Officer Kolbe to Criminal Investigator. Chief Marsh had never seen plaintiff perform detective duties, because plaintiff had been without firearm authority and credentials since before Chief Marsh arrived Hines. From this evidence, a reasonable jury could conclude that, when

10

Chief Thurman removed plaintiff's firearm authority and credentials, the change negatively affected plaintiff's career prospects.

In an attempt to make out a *prima facie* case of age discrimination, plaintiff says three employees—Patrick Logan (aged 29 years), Kelly Foot (aged 50) and Antonio Occasio (aged 35-40)—were significantly younger and treated more favorably. Plaintiff says that while his firearm authority and credentials were taken, Patrick Logan, Kelly Foot and Antonio Occasio lost only their firearm authority when they had medical issues. The Court agrees with defendant, however, that plaintiff has not shown that any of these employees is similarly situated to plaintiff. *See Barbera v. Person Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018) ("[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them.") (quoting *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)). Plaintiff has put forth no evidence as to whom these employees reported, what medical injury each suffered or how such injury affected his ability to perform the job. Without that information, plaintiff has not created an inference that age was the reason for the difference in treatment.

In any case, defendant has put forth a legitimate, non-discriminatory reason for taking plaintiff's firearm authority and credentials on January 25, 2013: plaintiff was injured and was, therefore, not medically qualified for the job. It is undisputed that, on January 23, 2013, plaintiff injured his wrist and shoulder. It is undisputed that, on January 24, 2013, plaintiff had submitted a note from his doctor that stated he should "refrain from shooting his weapon until further notice." It is undisputed that on January 25, 2013, the day after plaintiff submitted a doctor's note ordering him to "refrain from shooting his weapon," Chief Thurman took away plaintiff's

11

firearm authority and notified plaintiff in writing that, because he was not medically qualified, he would "not have arrest authority" and needed to turn in his credentials. It is undisputed that, in the same memo, Chief Thurman told plaintiff that "[o]nce you have returned to full duty we will arrange a date to return your credentials to you." It is also undisputed that at least two officers—plaintiff's brother and William Jones—who were roughly the same age as plaintiff lost their firearm authority, though not their credentials, in connection with a medical issue.

Based on this evidence, no reasonable jury could conclude that age was the but-for reason for Chief Thurman's decision to take plaintiff's firearm authority and credentials. Defendant is entitled to judgment as a matter of law on plaintiff's ADEA claim for disparate treatment. Defendant's motion for summary judgment is granted on plaintiff's ADEA claim for disparate treatment.

### 2. Plaintiff's claim for race discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The question for this Court is "whether the evidence would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Serv., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Of course, the Seventh Circuit has not overruled the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and, thus, "*McDonnell Douglas* burden-shifting [remains] a viable option for pursuing employment discrimination claims." *Barbera*, 906 F.3d at 629.

As was true of the ADEA claim, the lost bonus does not constitute an adverse action under Title VII. *Nasserizafar*, 546 Fed.Appx. at 575 ("Withholding a discretionary raise or bonus is not an adverse employment action.") (Title VII); *Maclin*, 520 F.3d at 788 (Title VII). A jury could, however, conclude that the loss of firearm authority and credentials was an adverse action, so the Court will consider whether plaintiff has put forth enough evidence from which a reasonable jury could conclude that the loss of firearm authority and credentials was based on race.

Plaintiff argues that five white males, Deputy Chief John Bailey, Patrick Logan, Officer Ingo, Kelly Foot and Alfred Thompson are similarly-situated employees who were treated more favorably. Once again, the Court agrees with defendant that plaintiff has not shown that these employees were similarly situated. Plaintiff has not put forth any evidence that these individuals reported to the same supervisor. The record contains evidence that at least one—Alfred Thompson—did not. At least one—Deputy Chief John Bailey—was not treated more favorably than plaintiff. The undisputed evidence is that Deputy Chief John Bailey, like plaintiff, lost his credentials during a medical issue. Most importantly, plaintiff has not put forth any evidence of what medical condition each individual faced or how that medical condition affected his ability to perform his job or retain his credentials. Without such information, the plaintiff has not created an inference that race was the reason for the difference in treatment.

In any case, as explained above, defendant had a legitimate, non-discriminatory reason for removing plaintiff's firearm authority and credentials: Chief Thurman told plaintiff he was taking plaintiff's credentials until plaintiff was once again medically qualified to perform the job. It is undisputed that plaintiff had, the day before, provided a doctor's note stating that he could not shoot his weapon until further notice. Although it seems that *most* officers with medical

13

issues lost only their firearm authority and not their credentials, the evidence shows that at least two of the officers who retained their credentials (but lost their firearm authority) due to a medical injury were, like plaintiff, African American. Plaintiff has not put forth evidence from which a reasonable jury could conclude that the difference in treatment was based on race.

Defendant is entitled to judgment as a matter of law on plaintiff's claim for race discrimination. Defendant's motion for summary judgment is granted as to plaintiff's race claim.

### 3. Plaintiff's claim for hostile work environment

The final cause of action plaintiff asserts in Count I is for hostile work environment. Defendant moves for summary judgment on this claim, arguing, among other things, that plaintiff lacks evidence of severe or pervasive offensive conduct based on any protected class. *See Smith v. Illinois Dep't. of Trans.*, 936 F.3d 554, 560 (7th Cir. 2019) ("A hostile work environment claim contains four elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII—here, race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability."); *Nicholson v. Allstate Ins. Co.*, 495 Fed.Appx. 716, 719 (7th Cir. 2012) ("These allegations, if true, suggest minor, isolated conduct not based on [plaintiff's] race, age, or sex, and thus do not constitute harassment.").

Plaintiff did not respond to defendant's motion for summary judgment as to the hostile-environment claim. Accordingly, plaintiff's hostile-environment claim is deemed abandoned. *See Little v. Mitsubishi Motors North Amer., Inc.*, 261 Fed. Appx. 901, 903 (7th Cir. 2008) (failure "to present facts or develop any legal arguments" in response to motion for summary

judgment constituted abandonment of claims); *see also Burton v. Board of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("[I]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If the [nonmoving party] does not do so, and loses the motion, it cannot raise such reasons on appeal.") (citations omitted). In any case, the Court agrees with defendant that plaintiff has not put forth evidence from which a reasonable jury could find that he was subjected to hostile-environment discrimination. The only comment plaintiff mentions (Kolbe's statement that plaintiff no longer worked at Hines) is not connected to any protected class and is certainly not severe or pervasive.

Defendant's motion for summary judgment is granted as to plaintiff's hostile-environment claim.

### B. Count II: plaintiff's claim for retaliation

In Count II, plaintiff asserts that defendant retaliated against him for his complaints of discrimination. Plaintiff never says whether he brings this claim under Title VII or the ADEA, but, it does not matter, because the standard is the same under either.

To make out a *prima facie* case of retaliation, plaintiff must show: "(1) he engaged in statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) there is a causal link between the protected activity and the adverse action." *Mollett v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019) (Title VII); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016) (ADEA). This requires proof "that the desire to retaliate was the but-for cause of the challenged employment action." *University of Tex. SW Medical Center v. Nassar*, 570 U.S. 338, 352 (2013); *Mollett*, 926 F.3d at 897 ("the question is not . . . whether [the protected conduct] was *a* but-for cause of the adverse action [but] rather whether the protected

activity was *the* but-for cause of the adverse action."). If defendant articulates a legitimate, non-discriminatory reason for the action, the plaintiff "must produce evidence that would permit a trier of fact to [conclude], by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Robertson v. Wisconsin Dep't. of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020).

The standard for an adverse action on a retaliation claim is different from the standard on a disparate treatment claim. A materially adverse action for purposes of a retaliation claim is one that would cause "a reasonable employee [to] have been deterred from making or supporting an investigation of discrimination." *Robertson*, 949 F.3d at 382 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Even in the retaliation context, the denial of a discretionary bonus is not an actionable adverse action. *Palermo v. Clinton*, 437 Fed.Appx. 508, 511 (7th Cir. 2011) ("The denial of one discretionary bonus . . . is also not sufficient to dissuade a reasonable employee from engaging in protected activity and therefore cannot support his retaliation claim."); *see also Rabinowitz*, 89 F.3d at 488-89 ("loss of a bonus is not an adverse action in a case such as this where the employee is not automatically entitled to the bonus") (retaliation claim). Here, as explained above, plaintiff has not shown he was entitled to the bonus. To the contrary, only employees who met performance standards set by a supervisor at the beginning of the year could get a bonus. Such a bonus is not sufficient to dissuade a reasonable employee from filing a complaint of discrimination, and plaintiff was himself not dissuaded from making a complaint.

Nonetheless, plaintiff can proceed as to a different adverse action. Specifically, as explained above, plaintiff has put forth evidence from which a reasonable jury could conclude that the loss of firearm authority and credentials was an adverse action. Accordingly, the Court

16

will consider whether plaintiff has put forth sufficient evidence to survive summary judgment as to that action.

The Court finds that plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that there is a causal link between his protected activity and the loss of firearm authority and credentials. Plaintiff has put forth evidence that Chief Thurman took away his firearm authority and credentials the day after the VA learned of plaintiff's EEO complaint. As the Seventh Circuit has explained:

> Suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment. Occasionally, however, an adverse action comes so close on the heels of a protected act that an inference of causation is sensible.

*Loudermilk v. Best Pallot Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). This is one of the rare cases when, in the context of other evidence, an adverse action on the heels of a protected act creates an inference of causation, and a reasonable jury could conclude that plaintiff was subjected to unlawful retaliation. Plaintiff has put forth evidence that, when Chief Thurman arrived at Hines, he had asked Assistant Chief Runge for a list of employees who had filed EEO complaints and had mentioned at a staff meeting that he intended to fight, rather than settle, EEO claims. From this, a reasonable jury could conclude either that it was merely Chief Thurman's job to respond to EEO claims or that Chief Thurman was trying to discourage additional claims. Plaintiff also put forth evidence that while many employees lost their firearm authority in the face of a medical problem, only two—plaintiff and another employee with "prior EEO activity," Deputy Chief John Bailey—also lost their credentials. In plaintiff's case, that loss occurred the day after the VA learned of his EEO complaint.

Accordingly, whether or not plaintiff has established retaliation is a question for a jury to decide. Defendant's motion for summary judgment is denied as to Count II.

17

## IV. CONCLUSION

For all of these reasons, the Court grants in part and denies in part defendant's motion [67] for summary judgment. Defendant is granted summary judgment on Count I. Plaintiff may proceed on Count II. This case is set for status on April 8, 2020 at 9:30 a.m.

**SO ORDERED.**                                           **ENTERED: March 5, 2020**

                                                                              **HON. JORGE ALONSO**
                                                                              **United States District Judge**